**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ANDREW EDWARDS )<br>)<br>Defendant ) | Criminal No. 16-204 |

**MEMORANDUM OPINION**

Defendant Andrew Edwards seeks compassionate release from his 156-month prison sentence under 18 U.S.C. § 3582(c)(1)(A). After suffering a stroke in 2021, he argues that his continued health problems constitute extraordinary and compelling circumstances warranting a reduction of the term of his imprisonment. The Government opposes, contending that Edwards has not met his burden to demonstrate extraordinary and compelling circumstances and that the 18 U.S.C. § 3553(a) factors militate in favor of continued detention. Finding that Edwards's medical condition does not constitute extraordinary and compelling circumstances, the Court will deny Defendant's Motion.

**I.   BACKGROUND**

Edwards pleaded guilty to one count of possession with intent to distribute heroin and crack cocaine under 21 U.S.C. § 841(a)(1) and (b)(1)(C), one count of carrying a firearm during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c)(1)(A)(i), and one count of possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). ECF No. 89. At the time of his conviction, Edwards was under supervision for previous crimes.[1] So the conviction also

---

[1] In 2008, Edwards pleaded guilty to conspiracy to distribute crack and cocaine under 21 U.S.C. § 846. He was sentenced to 121 months' imprisonment and 5 years' supervised release. He was released from custody and began his supervised release on December 18, 2015.

constituted a violation of his supervised release. On November 28, 2018, this Court sentenced him to 156 months' imprisonment in accordance with the plea agreement. Excluding good-time credits, Edwards has served approximately 76 months of his sentence. Presentence Investigation Report (PSR) ¶ 1; *see also* Mot. at 2.

At the time of Edwards's sentencing, the probation office noted he suffered from asthma but otherwise appeared in good health. PSR ¶ 70–72. In 2020, while incarcerated at FCI Gilner, he was assessed as having asthma, hyperlipidemia, and prediabetes. Mot., Ex. A at 1–3. He was further assessed for hypertension in June 2021. *Id.* at 4–5.

On October 3, 2021, Edwards informed an officer that he felt numb on the right side of his face and arm. Mot., Ex. B at 33. He was seen by medical personnel at the facility, who noted several signs of a stroke—facial drooping on the right side, trouble speaking, slurred speech, and grip deficit in his right hand. *Id.* at 33–34. They transferred Edwards to a local hospital for further evaluation. *Id.* at 32. He again transferred hospitals "due to hemorrhagic stroke secondary to a venous sinus thrombus (clot)." *Id.* at 31. At the second hospital, he underwent an "urgent craniotomy." *Id.* Following surgery, some symptoms persisted but he also showed signs of improvement—his vital signs were stable and he could follow simple commands, but he still exhibited right-side paralysis and was aphasic. *Id.* The hospital staff noted he would need "rehab placement" and a "pur[e]ed diet with assistance with his meals." *Id.*

Edwards recovered slowly. Throughout October and November 2021, he received physical, speech, and occupational therapy but continued to have issues with paralysis and, at times, forgot that he could not walk. *Id.* at 13–30. He required close supervision when using his wheelchair or shower chair, and he wore a helmet to protect himself from frequent falls. *Id.* at 26.

In November, he was transferred to MCFP Springfield, a level 4 facility where he remains today.[2] *Id.* at 22–25; Mot. at 4; Gov't Resp. at 4. Upon arrival, he was noted as having neurological and physical activity issues due to his stroke along with other health issues not clearly related to the stroke. Mot., Ex. B at 22. The nursing staff informed Edwards he was to "remain in bed until assistance [was] requested" and wear his helmet if not in bed. *Id.* at 24–25.

He began to improve by December 2021 and January 2022. Although he still experienced some left-side paralysis that caused balance and coordination problems, he could walk on level surfaces with the use of his cane. *Id.* at 1–3, 10–12. The nursing staff noted that Edwards "seem[ed] motivated to move and do more for himself." *Id.* at 9. He remained in therapy to continue his recovery but was thought to be "benefit[ing] from [a] handicap accessible room and railings with transfers." *Id.* at 2.

As with many patients, Edwards's recovery was not linear. In February 2022, he began having headaches, swelling on the left side of his head, and other neurological problems. Mot., Ex. C at 12–15, 18. A physical therapist noticed a "significant change," *id.* at 14, and observed that Edwards "appear[ed] to be getting worse [rather] than better," *id.* at 10. Edwards was referred for a neurosurgery consultation but was unable to see a neurosurgery provider until April 2022 due to COVID-19-related delays. *Id.* at 17, 31–32. Between February and April, he continued to experience pain, swelling, and diminished capacity on his right side. *Id.* at 9–10, 13–15, 32. In April, the neurosurgery provider determined Edwards "suffers from craniectomy defect secondary

---

[2] The Bureau of Prisons has four levels of medical care that range from Level 1—inmates below seventy years of age who are generally healthy with limited medical needs—to level 4—inmates who require "significantly enhanced medical services" and may need twenty-four-hour access to nursing assistance. Care Level Classifications for Medical and Mental Health Conditions or Disabilities, Federal Bureau of Prisons Clinical Guidance (May 2019), at 2–3, https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf.

to decompressive craniectomy" because of his October 2021 stroke. *Id.* at 31–32. The provider developed a treatment plan for Edwards, which involved a CT for a graft to "fit his craniectomy defect" and later a cranioplasty. *Id.* Edwards received his CT in May 2022. *Id.* at 30.

Since his consultation, Edwards's medical reports describe improvements from many of the initial problems that plagued him. His physical therapy was discontinued in April 2022 because he had reached his "max potential." *Id.* at 5. Another report noted that once Edwards undergoes his cranioplasty, he should be able to "graduat[e] from" use of his "protective helmet" while walking. *Id.* at 1. His nursing care assessment at the end of May acknowledged that many of his conditions will be "lifelong," *id.* at 28, but a detailed notes section describes Edwards as "very independent," "at times requir[ing] minimal assistance," "participat[ing] in PT," and "motivated," *id.* at 25. The same assessment described his aphasia as still present, but Edwards was "becoming more able to communicate with staff and peers." *Id.* Finally, the assessment stated he had "becom[e] more independent in ambulating with constant reminders to use assistive devices," and he was "oriented to his own abilities." *Id.*

The cranioplasty for his neurological deficits was initially scheduled for July 26, 2022, but was cancelled the day before. Reply, Ex. AA at 1. Edwards was rescheduled for the procedure on August 9, 2022, but records do not indicate if it occurred. *Id.* at 4. As of the filing of this opinion and order, the Court has not received any updates from counsel regarding the status of the procedure.

Edwards submitted a compassionate release request to the warden of his facility, MCFP Springfield, on April 15, 2022. He now moves for compassionate release under 18 U.S.C. § 3582, arguing his ongoing health problems from his 2021 stroke qualify as "extraordinary and compelling reasons."

## II. LEGAL STANDARDS

A district court is typically forbidden from modifying a term of imprisonment after it has been imposed "but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), amended through the First Step Act of 2018, Pub. L. No. 115-391. This section gives courts the power to alter a sentence upon motion by a defendant once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request." 18 U.S.C. § 3582(c)(1)(A).

Assuming the exhaustion requirement is met, a defendant must show that "the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C § 3553(a), to the extent they are applicable." *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

## III. DISCUSSION

Defendant has exhausted his administrative remedies in accordance with the statute. More than thirty days have passed since Edwards petitioned the Bureau of Prisons for compassionate release in April 2022. Mot., Ex. D. The Government does not dispute that he meets the exhaustion requirement. Gov't Resp. at 1 n.1. This Court thus considers whether Edwards has established extraordinary and compelling circumstances warranting his release.

**<u>Extraordinary and Compelling Circumstances</u>**

Edwards argues that his "medical and physical condition following his stroke establishes extraordinary and compelling reasons for compassionate release." Mot. at 13. While some of

5

Edwards's health problems do remain, he has made significant improvements from early 2022 and the health problems that linger are not sufficiently severe to qualify as extraordinary and compelling circumstances.

To begin, the Court must define "extraordinary and compelling reasons." Congress did not provide the federal courts with a definition, instead directing the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under compassionate release. 28 U.S.C § 994(t). The Sentencing Commission issued a policy statement that explained four possible categories of extraordinary and compelling reasons: (1) the defendant's medical condition, (2) the defendant's age, (3) the defendant's family circumstances, and (4) "other reasons" that are "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1. However, this policy statement was promulgated before the First Step Act's amendments to § 3582(c)(1)(A) in 2018 and thus applies only to Bureau-initiated motions. *Andrews*, 12 F.4th at 259. The Commission's failure to update the statement to reflect the existence of prisoner-initiated motions means the statement may "shed[] light on the meaning of extraordinary and compelling reasons" but is "not binding." *Id.* at 259–60. With this in mind, the Court first turns to the categories of extraordinary and compelling reasons found in the policy statement.

Edwards's arguments regarding his health can fall into only one possible category: the defendant's medical condition. The policy statement explains that extraordinary and compelling circumstances exist where the defendant is "suffering from a serious physical or medical condition," or "suffering from a serious functional or cognitive impairment" where the condition or impairment "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). Edwards argues his 2021 stroke has left him with serious health problems, some of which are expected to be lifelong, that have diminished his ability to properly care for himself within his facility. Mot. at 13; Reply at 7–8.

Although Edwards's condition is serious, his medical reports tell a story of a manageable condition that has improved and will continue to improve—despite the fact that some effects probably will be lifelong. Therefore, his medical condition is not an extraordinary and compelling reason for early release. Over the course of the last year, Edwards has adjusted to living with his new medical conditions—he uses his cane to walk, he continues to go to therapy,[3] and he receives medications to help with his ailments. As described in detail above, Edwards's most recent health assessments describe him as "independent" and requiring minimal assisted care. Edwards has made significant progress, which should only continue after he undergoes his cranioplasty.

Edwards seems to argue that suffering from chronic and lifelong conditions that require management and treatment, Reply at 7, is the same as "never expect[ing] to recover," U.S.S.G. § 1B1.13, cmt. n.1. But it is untenable to require recovery to mean his life looks exactly as it did before. Edwards's medical reports reflect a person adjusting to life after an unexpected medical emergency. His life may look different than it did at sentencing, but Edwards is expected to live and does not require round-the-clock care. Thus, he does not meet the policy statement's high burden for extraordinary and compelling circumstances.

Because the Commission's policy statement is merely persuasive—not binding—the Court also turns to dictionary definitions of "extraordinary and compelling" to reach our conclusion.

---

[3] Although Defendant states that he discontinued physical and speech therapy, Mot. at 8, Edwards's April 21, 2022 report indicates he was still attending occupational and speech therapy as of that date, and his May 31, 2022 nursing care assessment indicates he was still in physical therapy as of that date. Ex. C at 4, 25.

*Andrews*, 12 F.4th at 260. Black's Law Dictionary defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common." *Extraordinary*, Black's Law Dictionary (11th ed. 2019). Non-legal dictionaries provide a nearly identical definition. *Extraordinary*, Merriam-Webster (online ed., visited Aug. 25, 2022) (defining the term as "going beyond what is usual, regular, or customary" or "exceptional to a very marked extent").

The problem with characterizing Edwards's strokes and resulting health problems as an extraordinary medical concern is that strokes are all too common. More than 795,000 people in the United States have a stroke each year. Ctrs. for Disease Control & Prevention, *Stroke Facts* (Apr. 5, 2022), https://www.cdc.gov/stroke/facts.htm.[4] Of those strokes about 610,000 of them are first or new strokes. *Id.* As the Government argues, "[m]any people will encounter serious health issues during their lifetime, and this includes federal inmates." Gov't. Resp. at 1. Without any additional evidence that Edwards's recovery goes beyond what is usual, the Court concludes his current state of being does not constitute an extraordinary reason for early release.

In sum, Edwards's health problems are not sufficiently extraordinary and compelling to warrant his release. Because Edwards fails to meet this requirement, this Court will not evaluate the § 3553(a) factors.

**IV.   CONCLUSION**

Because Edwards has not established extraordinary and compelling circumstances warranting compassionate release, his motion will be denied. The denial will be without

---

[4] The Court takes judicial notice of the Centers for Disease Control & Prevention website. Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

prejudice and Edwards may file a new motion, or request reconsideration, if his circumstances change or he has evidence to show his condition is deteriorating.

    An appropriate order will be entered.